Filed 12/8/25  P. v. Moralez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B336202 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA128404) |
| v. | |
| GILBERTO MORALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David C. Brougham, Judge.  Reversed and remanded with directions.

Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————————————

# INTRODUCTION

A jury convicted Gilberto Moralez of gross vehicular manslaughter while intoxicated under Penal Code section 191.5, subdivision (a), and driving under the influence of alcohol and a drug while causing injury under Vehicle Code section 23153, subdivision (g). The jury also found that Moralez personally inflicted great bodily injury on the victim. The court sentenced Moralez to the upper term of 10 years for the vehicular manslaughter charge, while imposing and staying a six-year term for the impaired driving conviction and great bodily injury finding.

On appeal, Moralez contends the court erroneously instructed the jury on the elements of driving under the influence of alcohol and a drug under Vehicle Code section 23153, subdivision (g), because the court told the jury that it could find he violated the statute if it found he drove while under the influence of alcohol *or* a drug. Moralez also argues the court erred when it imposed the upper term for his vehicular manslaughter conviction because it relied on two aggravating sentencing factors—the increasing seriousness of his prior convictions and his unsatisfactory performance on probation—that were not found true beyond a reasonable doubt by the jury.

We agree with both of Moralez's contentions. A violation of Vehicle Code section 23153, subdivision (g), requires proof that the defendant drove under the *combined* influence of alcohol *and* a drug. The court, therefore, erred when it told the jury that it could convict Moralez of violating that statute by finding he drove under the influence of only one of those substances. The court also erred when it relied on two aggravating sentencing factors that were not found true by the jury when it imposed the upper

2

term for Moralez's vehicular manslaughter conviction. Because we cannot conclude either error was harmless beyond a reasonable doubt, we reverse and remand for further proceedings consistent with this opinion.

<strong>FACTUAL BACKGROUND</strong>

**1.      The accident**

Around 11:30 p.m. one evening in May 2021, Kerry Welsh was driving near the intersection of Hollenbeck Avenue and Vine Avenue in West Covina. The intersection was controlled by a four-way stop, and the connecting streets had a speed limit of 35 miles per hour. As Welsh entered the intersection after making a complete stop, Moralez approached the intersection while driving over 70 miles per hour. Moralez ran one of the stop signs, and his car collided with the driver's side of Welsh's car, pushing both cars out of the intersection.

Neighbors and passengers from other cars near the site of the crash checked on Welsh and the occupants of Moralez's car. Welsh was unconscious and could not breathe. When emergency responders arrived, they had to use a "jaws of life" tool to remove Welsh's driver's side door because the damage to her car was "so heavy." Welsh was transported to the hospital, where she later died from blunt-force trauma to her head.

One of the witnesses who approached Moralez's car noticed the smell of alcohol coming from the open driver's side window. When Moralez got out of his car, he "wasn't stable" and "almost seemed like he was impaired." Moralez was "almost stumbling" and not "walking normal." A neighbor who responded to the crash was an emergency medical technician who specialized in "inpatient drug and alcohol rehab for mental health patients." The neighbor smelled fresh marijuana on Moralez, and he noticed

3

Moralez was not walking "particularly smooth" and looked like he was going to "fall over."

## 2. The investigation

Detective Rickey Hawkins of the West Covina Police Department, a drug recognition expert, contacted Moralez at the scene of the crash. Detective Hawkins interviewed Moralez while he was being treated by paramedics. Moralez initially denied consuming any alcohol, medication, or marijuana, and he claimed he was driving 35 miles per hour and came to a complete stop immediately before his car collided with Welsh's car. Moralez later told Detective Hawkins that he drank one 12-ounce "White Claw" around 4:00 p.m.

Detective Hawkins also performed some field sobriety tests on Moralez at the scene of the accident. Moralez's blood pressure and heart rate were elevated, and his eyes displayed a lack of convergence, indicating he was impaired by marijuana.

Detective Hawkins interviewed Moralez again after he was taken to the hospital, which was about two hours after the accident. Moralez told Detective Hawkins that he lied about how much he drank during his first interview because he was "afraid." Moralez admitted that he drank "three Modelos" at his uncle's house earlier that night, and that he stopped drinking around 9:00 p.m.

During the interview at the hospital, Detective Hawkins performed more sobriety tests. Moralez's blood pressure and heart rate had returned to a normal range. Moralez's eyes were glassy, watery, and droopy, which indicated he was impaired by alcohol or marijuana. Moralez continued to display a lack of convergence in his eyes, and he exhibited sustained nystagmus at maximum deviation in each eye. Detective Hawkins performed

4

four tests to gauge rebound dilation in Moralez's eyes. The results of the first three tests, which did not involve shining light directly into Moralez's eyes, were normal. When Detective Hawkins shined light directly into Moralez's eyes during the fourth test, they displayed rebound dilation, indicating Moralez was impaired by marijuana.

Moralez told Detective Hawkins that he smoked marijuana the day before the accident. Moralez's mouth was dry and contained marijuana debris, however, which Detective Hawkins believed indicated that Moralez smoked marijuana more recently than he claimed.

Detective Hawkins performed a modified Romberg test, which measures a person's internal perception of time. Moralez's response to the modified Romberg test was off by two seconds, which was within a "normal" range. Although Detective Hawkins performed a breath test, the P.A.S. device that he used was not working properly and did not provide any reliable results. Based on his observations of Moralez, Detective Hawkins opined that Moralez was under the influence of alcohol and marijuana at the time of the accident.

Samples of Moralez's blood were drawn around 2:00 a.m. on the morning after the accident. The samples contained 0.00 percent alcohol, 8.42 nanograms per millimeter of Delta-9 THC (the "active" component of marijuana that causes impairment), and 41 nanograms per millimeter of carboxy THC (the nonpsychoactive component of marijuana). A criminalist who analyzed the results of Moralez's blood samples for the presence of alcohol could not determine what Moralez's blood alcohol content would have been at the time of the accident.

5

A forensic scientist who analyzed the results of Moralez's blood test for marijuana testified that the results indicated Moralez consumed marijuana only hours, and not days, before his blood samples were drawn. The forensic scientist could not state an opinion, based only on the results of Moralez's blood test, about what symptoms or level of impairment Moralez would have experienced from using marijuana.

After he was taken into custody, Moralez talked to one of his friends about the accident through jailhouse phone calls that were recorded. Moralez stated that he tested positive for "weed and alcohol," but he claimed that he "wasn't drunk" at the time of the accident. Moralez also stated that he should have "grabbed all [his] papers from the car and fled."

## PROCEDURAL BACKGROUND

In July 2023, the People filed an amended information charging Moralez with gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); count 1) and driving under the influence of alcohol and a drug while causing injury (Veh. Code, § 23153, subd. (g); count 2). As to count 2, the People alleged that Moralez personally inflicted great bodily injury on the victim under Penal Code section 12022.7, subdivision (a).

In October 2023, a jury convicted Moralez of gross vehicular manslaughter and driving under the influence of alcohol and a drug while causing injury. The jury also found that Moralez personally inflicted great bodily injury.

In December 2023, the trial court sentenced Moralez to the high term of 10 years for count 1, and it imposed but stayed a 6-year term for count 2, consisting of the high term of

three years for count 2 plus three years for the great bodily injury enhancement.

Moralez appeals.

## DISCUSSION

**1.  The court prejudicially erred when it instructed on the elements of Vehicle Code section 23153, subdivision (g)**

Moralez contends the court prejudicially erred by misinstructing the jury on the elements of driving under the combined influence of alcohol and a drug while causing injury under Vehicle Code section 23153, subdivision (g).  We agree.

The People charged Moralez in count 2 with violating Vehicle Code section 23153, subdivision (g).  That statute provides:  "It is unlawful for a person, while under the combined influence of any alcoholic beverage and drug, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver."  (*Ibid*.)  Other provisions of section 23153 criminalize driving under the influence of just alcohol or just a drug while doing any act forbidden by law, or neglecting to perform any duty imposed by law, and causing bodily injury to another person.  (See *Id*., subds. (a)–(f).)

The court instructed the jury with CALCRIM No. 2100, which defines the elements for the various violations outlined in Vehicle Code section 23153.  The version of the instruction that the court used told the jury that it could convict Moralez of violating section 23153, subdivision (g), if it found:  "1. The defendant drove a vehicle. [¶] 2. When the defendant drove a vehicle, the defendant *was under the combined influence of an alcoholic beverage or a drug or an alcoholic beverage and a drug*.

7

[¶] 3. While driving a vehicle under the influence, the defendant also committed an illegal act; [¶] AND [¶] 4. The defendant's illegal act caused bodily injury to another person." (Emphasis added.)

While deliberating, the jury submitted a question to the court, asking whether there was a typo on the verdict form for count 2. Specifically, the jury asked whether the phrase "driving under [the influence of] alcohol and a drug" should read "alcohol or a drug." Before addressing the jury's question, the court conferred with the parties. The court stated that it intended to reread CALCRIM No. 2100 and provide a verdict form that read "driving under the influence of alcohol and/or a drug causing injury."

The court then brought the jury back into the courtroom and told the jury that it should refer to CALCRIM No. 2100. The court began rereading the instruction, but it stopped after the second element. The court called the parties to an off-the-record sidebar discussion before reading the rest of the instruction to the jury. The court then provided the jury with a modified verdict form for count 2, which asked the jury, in relevant part, whether it found Moralez guilty or not guilty of "**Driving Under the Influence of Alcohol or a Drug or a combined influence of Alcohol and a Drug**." A copy of the original verdict form for count 2 is not included in the record.

The jury reached its verdict the same day the court reread CALCRIM No. 2100 and provided a new verdict form for count 2.

The parties agree, and so do we, that the court erred when it instructed the jury on the elements of Vehicle Code section 23153, subdivision (g), and provided the jury with a verdict form that misstated the offense's elements. As we

8

explained above, a violation of section 23153, subdivision (g), requires the People to prove that the defendant drove under the *combined* influence of alcohol *and* a drug. (See *Ibid*.) While the court's instructions and verdict form for count 2 correctly told the jury it could convict Moralez of violating that statute if it found he drove under the combined influence of alcohol and a drug, the instructions and verdict form also erroneously informed the jury that it could alternatively convict him of violating the statute if it found he drove under the influence of only alcohol or only a drug.

Where, as here, the trial court instructs the jury on two alternative theories of guilt, one of which was legally correct and one legally incorrect, it commits "alternative-theory error." (*In re Ferrell* (2023) 14 Cal.5th 593, 602 (*Ferrell*).) Where a theory of guilt presented to the jury is legally incorrect, the instructions on that theory violate the defendant's federal constitutional right to a jury that is properly instructed on the relevant law. (*Ibid*.)

We evaluate the prejudice of alternative-theory error "under the heightened standard of *Chapman v. California* (1967) 386 U.S. 18, [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*), the same standard of prejudice applicable to other instructional errors that misdescribe criminal offenses." (*Ferrell*, *supra*, 14 Cal.5th at p. 602.) Under *Chapman*, we must reverse unless, after examining the entire record and considering all relevant circumstances, we determine the error was harmless beyond a reasonable doubt. (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.) In other words, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Ferrell*, at p. 602.)

Alternative-theory error is harmless if the verdict, including the jury's findings on other issues, " ' "effectively

9

embraces" ' " the valid theory.  (*Ferrell*, *supra*, 14 Cal.5th at pp. 602–603.)  We are not limited to a review of the verdict itself, however.  (*Ibid*.)  The error is also harmless if it is impossible, on the evidence, to have found what the verdict shows the jury did find without finding the facts underlying the valid theory as well.  (*Id*. at p. 602.)  If, given the jury's actual verdict and the evidence, no reasonable jury would have found in favor of the defendant on the valid theory, we may conclude the error was harmless beyond a reasonable doubt.  (*Id*. at p. 603.)  In other words, "a reviewing court essentially asks whether any rational jury who made the findings reflected in the verdict and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict the defendant on a valid theory." (*In re Lopez* (2023) 14 Cal.5th 562, 591 (*Lopez*).)

"This test is exacting, and it requires much of a reviewing court."  (*Lopez*, *supra*, 14 Cal.5th at p. 581.)  We often must " 'conduct a thorough examination of the record.  If, at the end of that examination, [we] cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—[we] should not find the error harmless.' "  (*Ibid*.)  We do not " ' "become in effect a second jury to determine whether the defendant is guilty." ' "  (*Ibid*.)  Rather, we ask " 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.  If the answer to that question is "no," holding the error harmless does not "reflec[t] a denigration of the constitutional rights involved." ' "  (*Ibid*.)  As we explain, we cannot conclude the court's alternative-theory error when instructing on the elements of violating Vehicle Code

10

section 23153, subdivision (g), was harmless beyond a reasonable doubt.

Based on the court's instructions, the jury necessarily found: (1) Moralez drove a vehicle; (2) while doing so, he was under the influence of alcohol or a drug or the combined influence of alcohol and a drug; (3) while driving under the influence, Moralez committed an illegal act; and (4) that illegal act caused bodily injury to the victim. No other instruction told the jury that it must find Moralez drove under the combined influence of alcohol and a drug to convict him of violating Vehicle Code section 23153, subdivision (g). Likewise, the verdict form for count 2 asked the jury whether Moralez drove under the influence of alcohol and a drug, just alcohol, or just a drug. Accordingly, looking only at the court's instructions and the jury's verdict, we cannot conclude beyond a reasonable doubt that the jury made the findings necessary to convict Moralez of violating section 23153, subdivision (g) under a valid theory.

We therefore must examine the rest of the record to determine if it was impossible, on the evidence presented at trial, for the jury to have convicted Moralez of violating Vehicle Code section 23153, subdivision (g), without finding that he drove under the combined influence of alcohol and a drug. (See *Aledamat*, *supra*, 8 Cal.5th at p. 15.) Because the record contains some evidence that could lead a rational juror to make a contrary finding, we cannot conclude beyond a reasonable doubt that the verdict would have been the same absent the instructional error.

At the outset, we acknowledge that the People presented evidence that could support a finding that Moralez drove under the combined influence of alcohol and a drug. Moralez admitted that he drank three beers on the night of the accident, and that

11

he drank his last beer less than three hours before the crash. Witnesses at the scene of the crash also noticed the odor of alcohol coming from inside Moralez's car. Moralez had marijuana debris inside his mouth after the accident, and the results of his blood tests supported an inference that he used marijuana only hours before the accident. In addition, Detective Hawkins testified that based on his observations of Moralez shortly after the crash and while at the hospital, Moralez was likely impaired by drugs and alcohol.

Nevertheless, the evidence did not compel a finding that Moralez drove under the combined influence of alcohol and marijuana. For instance, the jury heard evidence that the results of Moralez's blood test showed he had a blood alcohol content of 0.00 several hours after the accident. Based on the results of that test, the People's criminalist could not form an opinion as to what Moralez's blood alcohol content would have been at the time of the crash. Further, while Moralez told his friend that he tested positive for marijuana and alcohol, he claimed that he was not drunk at the time of the accident. Based on the totality of the evidence, a rational juror may have had a reasonable doubt about whether the People proved that Moralez drove under the combined influence of alcohol and marijuana. That doubt, combined with the erroneous instructions and verdict form for count 2, could have led such a juror to find Moralez drove under the influence of only marijuana.

Other parts of the record show that the jury may have relied on an invalid theory to convict Moralez of violating Vehicle Code section 23153, subdivision (g). Although we do not have a copy of count 2's original verdict form that was provided to the jury, it appears from the jury's question concerning that count

12

that the original verdict form correctly asked the jury whether Moralez drove under the combined influence of alcohol and a drug.  Indeed, the jury asked the court whether the verdict form should ask whether Moralez drove under the influence of "alcohol or a drug" instead of under the influence of "alcohol and a drug." The jury's question indicates that it relied on the language from the court's version of CALCRIM No. 2100 that incorrectly informed the jury that it could convict Moralez of violating section 23153, subdivision (g), if it found he drove under the influence of alcohol *or* a drug.

The court reinforced the jury's apparent reliance on the invalid theory by rereading the erroneous language from CALCRIM No. 2100 and providing the jury with an amended verdict form that added the language supporting the invalid theory.  That the jury may have relied on an invalid theory to convict Moralez is further reflected by the fact that it reached its verdict shortly after hearing the court reread the erroneous language from CALCRIM No. 2100 and receiving the amended verdict form for count 2 that incorporated the invalid theory.

In sum, we cannot conclude beyond a reasonable doubt that the jury would have convicted Moralez of violating Vehicle Code section 23153, subdivision (g), absent the court's use of a version of CALCRIM No. 2100 that incorrectly defined the elements of that offense.

2.    **The instructional error on count 2 does not affect count 1**

Moralez asserts in passing that if we reverse his conviction in count 2, we must also reverse his gross vehicular manslaughter conviction in count 1 because it was predicated on

13

the jury's finding that he violated Vehicle Code section 23153, subdivision (g). We disagree.

In count 1, the People charged Moralez with gross vehicular manslaughter under Penal Code section 191.5, subdivision (a). That statute provides: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (*Ibid.*)

The court used CALCRIM No. 590 to instruct the jury on the elements of Penal Code section 191.5, subdivision (a). In defining the elements of the predicate offense for a violation of Penal Code section 191.5, subdivision (a), the court used the instruction's bracketed language defining a violation of Vehicle Code section 23153. The court did not select the language that corresponds with the other predicate offenses identified in Penal Code section 191.5, subdivision (a)—i.e., Vehicle Code sections 23140 and 23152. Thus, only Vehicle Code section 23153 could have served as the predicate offense for Moralez's gross vehicular manslaughter conviction in count 1.

While driving under the combined influence of alcohol and drugs, which was the offense charged in count 2, is one way to violate Vehicle Code section 23153, it is not the only way. As we explained above, the statute also makes it illegal to, among other things, injure another person while driving under the influence of

14

only alcohol or only drugs.  (See *Id.*, subds. (a) [alcohol] & (f) [drugs].)

Here, the court told the jury that CALCRIM No. 590 applied to gross vehicle manslaughter as charged in count 1. The version of CALCRIM No. 590 that the court used correctly instructed the jury that it could convict Moralez of gross vehicular manslaughter if it found, among other things, that he "drove under the influence of an alcoholic beverage or a drug or under the combined influence of an alcoholic beverage and a drug."  (See Veh. Code, § 23153, subds. (a), (f), & (g).)

Moralez does not contend that the version of CALCRIM No. 590 that the court used in this case incorrectly defined the elements of Penal Code section 191.5, subdivision (a), including the elements of the predicate offense under Vehicle Code section 23153.  On this record, we presume that the jury understood the court's instructions and applied CALCRIM No. 590 in finding Moralez committed gross vehicular manslaughter in count 1.  (*People v. Alvarez* (2025) 18 Cal.5th 387, 458.)  Moralez has, therefore, failed to show the court committed any instructional error with respect to gross vehicular manslaughter as charged in count 1.

### 3.    Upper term sentence for count 1

Moralez next contends, and the People agree, that the trial court erred when it imposed an upper term sentence for his vehicular manslaughter conviction based on two aggravating sentencing factors to which Moralez did not stipulate and that were not found true by the jury.  The parties dispute, however, whether the court's reliance on those factors was prejudicial. We conclude it was.

15

At sentencing, the prosecutor asked the court to consider two aggravating sentencing factors: (1) whether Moralez's prior performance on probation was unsatisfactory; and (2) whether Moralez's prior convictions increased in seriousness. The court admitted four exhibits—Moralez's certified booking record, a four-page certified report of Moralez's criminal history, a nine-page minute order from one of Moralez's prior convictions, and a "judicial automated index" reflecting that Moralez had three sustained petitions as a juvenile. The prosecutor also asked the court to rely on Moralez's probation report to determine whether Moralez's prior convictions increased in seriousness.

Moralez did not address whether his prior performance on probation was unsatisfactory, but he did argue the court should find his prior convictions did not increase in seriousness. Moralez argued that it was "important that the court take into consideration the actual facts surrounding" his prior convictions, pointing out that the probation report indicated his grand theft conviction arose out of an incident where he took his mother's car, a circumstance that Moralez argued diminished the severity of that offense. Moralez also argued that the severity of his resisting arrest conviction was diminished by the fact that he only ran from, but did not get into a physical altercation with, the arresting officers.

The court found both aggravating sentencing factors true. Based on those findings as well as the "totality of th[e] case," the court imposed the upper term of 10 years in prison for Moralez's vehicular manslaughter conviction.

Under the Sixth Amendment to the United States Constitution, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and

established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281.) The Sixth Amendment thus prohibits a court from increasing a defendant's sentence "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham v. California*, at p. 275.)

Effective January 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended Penal Code section 1170, the determinate sentencing law, to incorporate these constitutional principles. (Stats. 2021, ch. 731, § 1.3.) Now, under section 1170, subdivision (b)(1), if a statute specifies three possible terms of imprisonment, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Under section 1170, subdivision (b)(2), the court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Ibid.*)

Nevertheless, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (Pen. Code, § 1170, subd. (b)(3).) The court may consider certified records of a defendant's prior conviction only for the limited purpose of "determining the fact of a prior conviction and the then-existing elements of that offense. [Citation.] '[N]o more' is allowed." (*Erlinger v. United States* (2024) 602 U.S. 821, 839.)

17

As our Supreme Court explained in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), a defendant's Sixth Amendment right to a jury trial "is triggered by section 1170(b)'s substantive requirements governing imposition of an upper term sentence." (*Id.* at p. 762.)  Now, a jury must find beyond a reasonable doubt all facts relied on to impose an upper term, except for the fact of a prior conviction.  (*Id.* at p. 768.)  Thus, "under the current statute[,] a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established."  (*Ibid.*)

In *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), the Supreme Court considered the scope of the right to a jury trial on aggravating sentencing factors and how it affects the exception for the court's use of a defendant's prior convictions.  (*Id.* at p. 1076.)  As the court explained, a defendant has a Sixth Amendment right to a jury trial "on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm."  (*Id.* at p. 1086.)  This right extends to aggravating sentencing factors based on the increasing seriousness of the defendant's prior convictions and the defendant's prior unsatisfactory performance on probation.  (*Id.* at p. 1083.)  Thus, absent a proper waiver, the defendant is entitled to have a jury determine beyond a reasonable doubt that those aggravating factors exist.  (*Id.* at p. 1085.)  Accordingly, the court may not use certified records of a defendant's prior conviction to find the defendant's prior convictions increase in seriousness or the defendant's prior performance on probation was unsatisfactory.  (*Id.* at pp. 1082–1084.)

18

The parties agree, and so do we, that the court erred when it imposed the upper term for Moralez's vehicular manslaughter conviction based on its findings that Moralez's performance on probation was unsatisfactory and that his prior convictions increased in seriousness. The jury did not make any findings concerning Moralez's performance on probation or whether his prior convictions increased in seriousness. Because the court relied on facts that were not found true by the jury to increase Moralez's punishment beyond the middle term, the court's reliance on those facts violated Moralez's Sixth Amendment right to a jury trial. (*Lynch*, *supra*, 16 Cal.5th at p. 768.)

When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term, the appellate court evaluates prejudice under *Chapman*. (*Wiley*, *supra*, 17 Cal.5th at p. 1087.) The sentence must be reversed and remanded " 'unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Ibid*.) Applying this standard, we conclude the trial court's failure to afford Moralez a jury trial on whether his prior convictions increased in seriousness was prejudicial.

The court found Moralez had the following criminal history: (1) a sustained petition as a juvenile for burglary in 2012; (2) a sustained petition as a juvenile for joyriding in violation of Vehicle Code section 10851 in 2013; (3) a sustained petition as a juvenile for grand theft in violation of Penal Code section 487 in 2013; (4) a misdemeanor conviction as an adult for resisting arrest in violation of Penal Code section 148; and (5) the

19

underlying vehicular manslaughter and driving under the influence convictions in 2023.

The People argue that it is clear beyond a reasonable doubt that a jury would have found Moralez's prior convictions increased in seriousness. According to the People, it is "[w]ithout question" that Moralez's "relatively minor sustained juvenile petitions and misdemeanor conviction for resisting arrest ultimately escalated into the worst possible scenario in the instant case: the death of another human being . . . with great bodily injury."

While we do not disagree that a jury could find that Moralez's prior convictions increased in seriousness, we cannot conclude beyond a reasonable doubt that a jury would have made that finding. As the Supreme Court emphasized in *Wiley*, the analysis required for determining whether a defendant's prior convictions increased in seriousness is "comparative and qualitative," which makes "it ' " 'difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' " ' " (*Wiley*, *supra*, 17 Cal.5th at p. 1090.)

That difficulty exists here. For instance, a jury could find that Moralez's first sustained offense for burglary as a juvenile, which apparently involved him breaking into someone else's garage, was more serious than the next three offenses that he committed—joyriding and grand theft as a juvenile and misdemeanor resisting arrest as an adult. Indeed, Moralez argued below that his joyriding and resisting arrest offenses involved conduct that was less serious than one would expect a typical violation of the underlying statutes to involve. Moralez

20

claimed that he only drove his mother's car without permission for the joyriding offense, and that he merely ran away from the police for the resisting arrest offense. Had Moralez been able to present this argument (as well as evidence to support it) to the jury, the jury very well could have found that his prior convictions did not increase in seriousness overall but instead decreased in seriousness after he committed his first offense before spiking in seriousness when he committed the underlying convictions in this case. We therefore cannot conclude beyond a reasonable doubt that a jury would have found beyond a reasonable doubt that Moralez's prior convictions increased in seriousness.

Reversal is required unless we can find "the omission of a jury trial [was] harmless beyond a reasonable doubt as to *every* aggravating fact relied upon by the trial court to impose an upper term." (*Lynch, supra,* 16 Cal.5th at pp. 775–776.) Because we cannot find harmless beyond a reasonable doubt the omission of a jury trial on the issue of whether Moralez's prior convictions increased in seriousness, we need not determine whether the omission of a jury trial on the issue of whether Moralez's performance on probation was unsatisfactory was also prejudicial.

## DISPOSITION

Moralez's conviction in count 2 for violating Vehicle Code section 23153, subdivision (g), and his sentence for count 1 are reversed. The conviction in count 1 is otherwise affirmed. The matter is remanded for retrial of count 2, should the People elect a retrial, and for resentencing on count 1.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

22